LANDES LAW CORPORATION
Ezra D. Landes (SBN 253052)
2450 Colorado Ave., Ste. 100E
Santa Monica, California 90404
Telephone: (310) 926-2862
ezra@landeslawcorp.com

Attorney for Plaintiff Ares Avila

Landes Law Corporation
2450 Colorado Ave., Ste.100E
Santa Monica. CA 90404
Telephone 310-L926-2862; www.landeslawcorp.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ARES AVILA, as successor in interest to Miranda Rayanne Gonzales,

Plaintiff,

v.

COUNTY OF MERCED; COUNTY OF MERCED BOARD OF SUPERVISORS; VINCENT ANDRADE; DOES 1-100,

Defendants.

Case No. 1:26-CV-02280-KES-EPG

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. § 1983**

1. **DELIBERATE INDIFFERENCE TO CONSTITUTIONAL VIOLATIONS;**

2. **MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS;**

**DEMAND FOR JURY TRIAL.**

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

COMES NOW Plaintiff ARES AVILA, successor in interest to Miranda Rayanne Gonzales, who complains, avers, and alleges as follows:

## I. INTRODUCTION

1. Miranda Rayanne Gonzales ("Miranda") was born and raised in California. Miranda's father was born in Texas, and her mother was born in California. Miranda's three sisters and brother were also born and raised in California, as were Miranda's three children—her daughter, Ares, age 18, and her two sons, ages 7 and 5. On March 13, 2023, Miranda was arrested for the misdemeanor offense of allegedly violating a court order. The charge did not involve any allegations of violence, use of a weapon, drugs or alcohol, or Miranda causing any physical harm to herself or others. Ten days after her arrest, Miranda purportedly appeared in court for a hearing that lasted under a minute where she wasn't spoken to and didn't speak. Over the next year, Miranda never saw the inside of a courtroom, never saw an attorney, and never returned home. At the time of her arrest, Miranda was 31 years old, about 5'0" tall, 135 pounds, sober, and in good health.

2. Miranda spent the final thirteen months of her life tortured, starved, drugged, and trafficked by County officials, employees, and agents, who kept Miranda's family at bay with misinformation, avoidance, and lies, while shuttling Miranda from one facility to the next, until she was murdered at Crestwood Behavioral Health Center in Bakersfield ("Crestwood"), on or about April 6, 2024, five counties and 180 miles from Merced.

3. County Counsel is the legal advisor for the County of Merced and the attorney for the Board of Supervisors and all County departments. County Counsel and Counsel's delegees are responsible for approving and signing the County's contracts with mental health care facilities, including Crestwood, where conservatees are sent for treatment after being placed in a judicially ordered temporary conservatorship under The Lanterman-Petris-Short Act, pursuant to California Welfare and Institutions Code section 5352.1 (referred to as "LPS T-Con"). County Counsel and/or Counsel's delegees are also the attorneys for the Public Conservator in conservatorship cases filed in the County of Merced. In other words, the attorneys who approve and sign the County's contracts with mental health care facilities are

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

the same attorneys who have the authority to petition the County's Superior Court to issue orders to detain County residents at the mental health care facilities under contract.

4. County Counsel and Counsel's delegees and agents orchestrated the creation of a fake conservatorship for Miranda. After her arrest, Miranda was imprisoned at a non-operational correctional facility with about nine other women and no other inmates, where she was preyed upon for nine months, and locked in a cell covered in urine, feces, and blood, without any contact with an attorney or the outside world. After she was placed in the temporary conservatorship eight months after her arrest, the County falsified medical records to support the conservatorship. Additionally, the County forcibly medicated Miranda with copious amounts of drugs to treat schizophrenia, even though she was not schizophrenic and never received a medically valid diagnosis for schizophrenia.

5. Once Miranda arrived at Crestwood, Miranda was presented a written agreement to review and sign for Crestwood's "sex program" under which male patients at Crestwood had institutionally sanctioned sex with female patients under the supervision of Crestwood's staff. The agreement stated that Miranda had no identifiable "risk factors" that made her incapable of giving her consent, even though Miranda was at the time imprisoned by the County under the premise that she was allegedly a schizophrenic conservatee who was "gravely disabled" and incapable of handling her own affairs or making any decisions for herself. Even if she was not an LPS T-Con, Miranda could not consent to sexual relations in a locked facility where consent can be coerced, forced, or used as a form of currency. The County and its agents facilitated de facto sexual assaults and rapes. Miranda did not agree to participate in the sex program and did not sign the agreement, but a nurse e-signed and dated it to confirm it was reviewed with Miranda.

6. Separately, a male Crestwood "Service Coordinator," who was not a medical professional, created his own "Recovery Service Plan" under which the Service Coordinator designated himself "to meet with Miranda weekly to discuss coping skills that will help her to be able to refrain from displaying inappropriate sexual behaviors," which was not something that any medical professional ever said she needed treatment for, and was not even related to

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

the fake schizophrenia diagnosis that Miranda was allegedly being treated for at Crestwood. Crestwood's records confirm that every week Miranda was forced to meet with the Service Coordinator to address her "sexual behaviors." Miranda had been told that her "length of stay" at Crestwood would be "dependent on her compliance" with the prescribed treatment plan.

7. Without any investigation, Miranda's death was immediately ruled a suicide, but it was a homicide. Either way, the County was responsible for ensuring that Miranda was returned home alive when she was released from custody.

## II. JURISDICTION AND VENUE

8. This civil action is brought for the deprivation of constitutional rights as protected by 42 U.S.C. §§ 1983, 1988, and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events, omissions, and occurrences giving rise to this action occurred in this judicial district, in the Counties of Merced and Kern, California.

## III. PARTIES

10. Plaintiff Ares Avila is a resident of the County of Merced, California, and brings this action as the successor in interest of her mother, Miranda Gonzales, pursuant to California Code of Civil Procedure § 377.32. At all relevant times, Miranda Gonzales was a resident of the County of Merced, and she suffered the constitutional harms described in this Complaint in the Counties of Merced and Kern.

11. Defendant County of Merced is, and at all relevant times was, a public entity duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued.

12. The County of Merced Board of Supervisors is, and at all relevant times was, the legislative and executive body of the County of Merced government and is responsible for seeing that functions delegated to the County of Merced are properly discharged. Unless noted, the County of Merced and the County of Merced Board of Supervisors are collectively

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

referred to herein as the "County."

13. Vincent Andrade is, and at all relevant times was, the Merced County Public Defender and a resident of Merced County. On information and belief, at all relevant times, the Public Defender's Office employed about a dozen Deputy Public Defenders who worked under the direction and supervision of Andrade. Miranda's case was not assigned to a Deputy Public Defender, and Public Defender Andrade personally appeared in the Merced County Superior Court at all the hearings in Miranda's case following her March 13, 2023 arrest. On information and belief, at all relevant times, Andrade reported to the Assistant County Executive Officer who reported to the County Executive Officer who reported to the Board of Supervisors.

14. The defendants identified as DOES 1-100 are unknown and they are therefore sued under fictitious names. Additionally, discovery is necessary to determine the extent, if any, to which certain individuals personally participated in the violations of Miranda's constitutional rights. Plaintiff will seek leave of Court to amend the Complaint and/or substitute the names of these defendants as that information becomes known. Miranda's representatives have made reasonable efforts to obtain documents and information from the County and its delegees, employees, and agents, but the County and its delegees, employees, and agents have provided few documents and limited information. Miranda's representatives have acted with due diligence to investigate the facts and circumstances surrounding Miranda's imprisonment and death, but they have repeatedly been met with substantial fraud, misdirection, avoidance, and concealment.

## IV. <u>GENERAL ALLEGATIONS</u>

### A. March 13, 2023 to December 2, 2023: Miranda's Imprisonment at Sandy Mush

15. For the first nine months following her arrest, from March 13, 2023 to December 2, 2023, Miranda was detained at John Latorraca Correctional Center, a facility operated by the Merced County Sherrif's Office that's commonly referred to as "Sandy Mush" (the name of the street where it's located). Miranda spoke to her mother, Helen, twice during her first week at Sandy Mush. After that, Miranda was not allowed to make or receive any

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

phone calls for the duration of her imprisonment there. Defendants' failure to ensure that Miranda and other detainees had access to phones violated Miranda's First, Sixth, and Fourteenth Amendment rights. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda had access to phones, and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

16. On April 6, 2023, Miranda's mother, Helen, went to court for Miranda's misdemeanor arraignment but Miranda wasn't brought to court. Andrade appeared on Miranda's behalf but didn't speak. The judge was told by the jail that Miranda refused to appear for the hearing. The judge continued the hearing to April 13, 2023.

17. Andrade either knew the jail's claim that Miranda had refused to appear was false or made no attempt to verify the jail's claim to be true. Andrade never attempted to communicate with Miranda about her alleged refusal to appear, and Miranda had no ability to communicate with Andrade or any attorney or her family by any means. Andrade knew that Miranda was imprisoned at Sandy Mush, and that she was not notified about her arraignment, and did not have access to a phone or any information about her case. Andrade knew that Miranda was not given the choice to attend the hearings in her case. Andrade knew that Miranda was never visited by an attorney during the 13 months between her arrest and death. Defendants' failure to ensure that Miranda and other detainees had access to the court to attend the hearings in their cases and access to an attorney violated Miranda's First, Sixth, and Fourteenth Amendment rights. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda had access to the court and an attorney, and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

18. On April 13, 2023, Helen returned to court for Miranda's arraignment. Andrade appeared in court again, and the jail again told the judge that Miranda refused to appear in court. Andrade requested that Miranda be evaluated by a doctor under California Penal Code section 1368 to determine if she was mentally competent to understand the proceedings, assist in her defense, and stand trial. The judge ordered Miranda to be evaluated by a doctor and continued the matter to May 11, 2023. The judge ordered Miranda to appear in court on the continued date. Miranda was never informed of the judge's orders. Defendants had Miranda's mental competency evaluated without adequate investigation to determine if there was a need for a mental competency evaluation and without knowledge of whether a mental competency examination was justified. Defendants' failure to ensure that a mental competency examination of Miranda and other detainees was legitimate and justified caused Miranda and her person and other detainees and their persons to be seized and further detained in violation of the Fourth and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that a mental competency

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

examination of Miranda and the seizure of her person was legitimate and justified and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

19. On April 13, 2023, a document was filed in Miranda's case entitled "Notice To In-Custody Defendant's [sic] In Merced County Regarding Refusal To Attend Court For Trial Or Any Hearing" (the "Refusal Notice"). The Refusal Notice states: "This is to certify that *Gonzales, Miranda* ,presently confined to *Merced* County Detention Facilities, refuses: Court for TRIAL or Any Hearing in Dept: *3* Date/Time: *4/13/23 @0830*." The italicized portions are handwritten into the form in blank spaces. The Refusal Notice further states: "You are hereby notified that if you refuse to attend any future trial and/or court hearing, that the trial and/or court hearing will proceed in your absence as long as transportation to and from court was available to you and you refused to attend. Your refusal to attend will be deemed a voluntary waiver of your right to be present." The Refusal Notice further states: "Evidentiary and legal rulings will be made at the hearings and/or trial as well as scheduling future court dates. A voluntary waiver of your presence as [sic] trial or any court hearing bears significant risk that may prove detrimental to your case and /or possible sentence/punishment or disposition of the case. The court and your counsel strongly recommend that you attend all future court hearings and/or trial of your case." The Refusal Notice further states: "Proper courtroom behavior and dress are required. Refusal to exercise proper decorum and to wear clothing provided or approved by the custodial staff will be deemed a decision by you to voluntarily refuse to attend the court hearing and/or trial." The Refusal Notice further states: "In order to protect your interest in your pending case and/or cases, the court and criminal defense attorneys recommend that you communicate with your attorney. Your cases will not be delayed because you refuse to communicate with your attorney."

20. On the bottom of the page, the Refusal Notice states: "If there is a refusal to sign, two (2) people shall witness this.[sic] and the circumstance of the refusal documented." The Refusal Notice was not signed by Miranda, and the circumstances of her alleged refusal to sign were not documented. Handwritten on the Refusal Notice are the last names of two

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

corrections officers without signatures. Miranda was not shown the Refusal Notice by anyone, including her attorney, Andrade, and neither Andrade nor anyone else ever discussed it with her. Miranda was not offered transportation to or from the court by the jail or anyone else, and Andrade did not inquire if Miranda wished to attend court. Miranda was not provided with any means by which she could communicate her wishes to anyone. The Refusal Notice that purportedly claimed to admonish Miranda of her rights and that they could potentially be waived was filed on the same day that Andrade claimed in court that there was a basis to believe that Miranda was incompetent and incapable of understanding the Refusal Notice and waiver. Andrade knew that the Refusal Notice had no legal force or effect and was created in bad faith, with Andrade's knowledge, as a prop to be used solely for the purpose of depriving public defense clients, including Miranda, of their constitutional rights and to evade liability. Plaintiff has identified dozens of other cases involving clients of the Public Defender's Office which the same Refusal Notice form was filed and where the notices were not shown to the client and/or the forms were not filled out by subordinates in a manner that complied with the form's own purported requirements for filing. Defendants' creation and use of the Refusal Notices in Miranda's case and other detainees' cases facilitated Miranda and her person and other detainees and their persons to be seized and further detained in violation of the Fourth and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by facilitating the creation and/or use of the Refusal Notices and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

21. On or about May 3, 2023, pursuant to California Welfare and Institutions Code

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

section 14011.10, the Merced County Human Services Agency mailed to Miranda at her home address a document entitled "Notice of Action Suspension of Medi-Cal Benefits for an Incarcerated Individual." The document contained a May 3, 2023 "Notice date" and stated: "Suspension of Benefits Notice For: Miranda Gonzales. Beginning on 3/13/2023, your Medi-Cal benefits are suspended. Here's why: The county has received information that you are an inmate of a public institution. Your Medi-Cal benefits will continue to be suspended, as long as: You remain otherwise eligible for Medi-Cal[,] [y]ou remain incarcerated in a public institution. … If your circumstances change and you become ineligible for Medi-Cal while you are an inmate of a public institution, the county will send you a separate notice of action. … You can appeal this suspension notice. The back of this page explains how to request a hearing." Defendants' failure to ensure that Miranda and other detainees received mail and notices from the County that impacted their rights violated the First, Fourth, Fifth, Sixth, and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda had access to mail and notices from the County that impacted her rights and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

22. Helen returned to court on May 11, 2023, but again Miranda was not there. According to the court's Minute Order, Miranda "refused to appear for court." The May 11, 2023 Minute Order states that the court continued the matter to June 8, 2023, to provide more time "to receive the evaluation report" from the doctor who was directed to provide the competency evaluation requested by Andrade on April 13, 2023.

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

23. There is no record of what was said at the May 11, 2023 hearing because, according to the Minute Order, Andrade "waived" Miranda's right to have a court reporter transcribe the proceedings at no cost to Miranda. According to the Merced County Superior Court, there is also no audio recording. Andrade knew that it was not in Miranda's interests to ever waive her right to have a court reporter transcribe the proceedings in her case (or to at least have an audio recording made at no cost), and Andrade knew that waiving the right to have a record of the proceedings only benefitted himself, the County, and anyone else who sought to deprive Miranda of her constitutional rights. Andrade waived Miranda's right to have the proceedings in her case transcribed knowing that Miranda was not present in court and that a transcript or audio recording of the proceedings would be the only way that Miranda or anyone else would ever be able to find out what was said in court. Andrade also knew that not having a record of the proceedings would impede challenges later raised as to the quality and effectiveness of the representation Miranda received. Defendants' failure to ensure that a record exists of all proceedings in Miranda's case and in other detainees' cases violated the First, Fourth, Sixth, and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that a record exists of all proceedings in Miranda's case and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

24. When Helen reached someone at Sandy Mush and asked why her daughter hadn't been brought to court since her arrest in March, she was told that Miranda refused to go to court. Helen did not believe that Miranda would refuse to go to court for a hearing in her

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

case or that she would pass up the possibility of seeing her family in court. When Helen asked to see her daughter, Helen was told that she couldn't visit her daughter unless Miranda put Helen on the visitors list. Helen was told she couldn't be put in touch with Miranda to tell Miranda to add her to the visitors list. Helen was told that Miranda was free to call her mother if she wanted but that Miranda chose not to call home. Helen did not believe Miranda would choose not to call home. Miranda called her mother frequently, sometimes four times a day, and called all her family members frequently. Helen sent packages to Miranda at Sandy Mush, but the packages were returned. Defendants' failure to ensure that Miranda and other detainees had access to visitation and packages from immediate family members violated the First, Fourth, Sixth, Eighth, and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda was able to receive visitors and packages and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

25. On June 8, 2023, Andrade again appeared and again waived Miranda's right to have the hearing transcribed by a court reporter. According to the Merced County Superior Court, there is also no audio recording of the hearing. The Minute Order states: "The defendant refused to attend today's court hearing." The Minute Order indicates that the doctor's report ordered on April 13, 2023 was filed on May 23, 2023. The Minute Order indicates Andrade "submitted" on the doctor's evaluation and the court "refers the matter to the Conditional Release Program (CONREP)" for Miranda's placement in an outpatient release program under California Penal Code section 1370.

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

26. Andrade again appeared in court on July 6, 2023, waived a court reporter on Miranda's behalf, and, according to the Superior Court, there is no audio recording of the hearing. The Minute Order again states: "The defendant refused to attend court." The Minute Order states that since the June 8, 2023 hearing, a report was filed and "CONREP indicated they are not authorized to evaluate the defendant." The Minute Order states that the court was referring the matter to the Public Conservator's Office for conservatorship considerations, and would continue the matter to August 3, 2023, to await receipt of a report from the Public Conservator's Office.

27. On August 3, 2023, Andrade told the court that Miranda refused to come to court. Andrade asked that the matter be continued because additional time was needed to confirm that a referral will be made to County Counsel for Miranda to be placed in a conservatorship. The court continued the matter to August 17, 2023. Miranda's father was present in the courtroom and asked the judge, "You mentioned something about conservatorship?" The judge directed Miranda's father to "talk to the attorney, sir."

28. On August 17, 2023, Andrade again appeared in court and again "waived" Miranda's right to a court reporter. According to the Superior Court, there is also no audio recording of the hearing. The Minute Order indicates that an attorney from the County Counsel's office attended the hearing, made a "request to continue the matter to evaluate defendant for possible conservatorship," and the matter was continued to September 7, 2023.

29. On September 7, 2023, Andrade appeared in court and again "waived" Miranda's right to a court reporter. According to the Superior Court, there is no audio recording of the hearing. The Minute Order states: "Per the jail, the defendant refused to come to court. … [Deputy] County Counsel is present in the Courtroom and advises that the defendant refused to speak with the Doctor." The Minute Order states: "The Court continues the matter for the defendant to be present to be interviewed by the Doctor on 9/28/23." The Minute Order further states: "ATTN JAIL: The Court orders the defendant to be extracted and brought to court on 9/28/23 if she refuses."

30. Despite the Court's September 7, 2023 order, Miranda was not brought to court

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

on September 28, 2023. Andrade appeared and again "waived" Miranda's right to a court reporter and, according to the Superior Court, there is no audio recording of the hearing. The Minute Order states that "[Deputy] County Counsel is present in the Courtroom and indicates the defendant is being interviewed." The court continued the matter to October 26, 2023 "for status of conservatorship."

31. Helen kept calling Sandy Mush, crying and begging to see her daughter. An employee at the jail finally put Helen on the visitors list, which allowed Helen to visit Miranda for the first time seven months after Miranda's arrest.

32. In or about October 2023, Helen visited Miranda at Sandy Mush. When Helen saw Miranda, she was horrified by Miranda's appearance. Miranda had lost a substantial amount of weight since she was last seen and appeared sickly and malnourished. Helen estimated, and records confirm, that Miranda weighed about 135-140 pounds when she was arrested but weighed about 90-100 pounds when Helen saw her for the first time after her arrest. Helen and Miranda were separated by a glass partition, but the phones didn't work, so they couldn't speak to one another beyond their muffled yells through the glass. Miranda cried out for her mother's help and begged her mother to bring her food, repeatedly saying she was hungry. Helen and Miranda cried and prayed together through the glass.

33. Helen went to Miranda's sister Krystal's house crying and Helen reported what she saw at Sandy Mush. Krystal emailed the County, including the Sherriff's Office, Police Department, and Fire Department, asking for help, but received no response.

34. On October 26, 2023, Andrade appeared in court and again "waived" Miranda's right to have a court reporter transcribe the proceedings and, according to the Superior Court, there is no audio recording of the hearing. The Minute Order states: "The defendant's presence is waived for today. Per the jail, the defendant refused to come to court." According to the Minute Order, [Deputy] County Counsel was "present in the courtroom and advises the investigation has just started" and made a "request to continue the matter for the investigation to be completed." The court continued the matter to November 30, 2023.

35. Krystal eventually received a call from a Sandy Mush administrator, who

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

attempted to reassure Krystal that Miranda was fine and agreed to put Krystal on the visitors list.

36. When Krystal and Helen arrived at Sandy Mush, Krystal saw that the facility was undergoing major construction. The administrator who had called Krystal came out to meet Krystal and Helen and tried to give them comfort and persuade them that nothing irregular was going on. Krystal asked the administrator about the construction, and he informed them that most of the inmates had to be re-housed because of the construction, but the jail felt it was best not to move 10 female inmates who were considered "problematic" or had "mental disorders." Miranda, however, did not fit that description. It was later confirmed that one of the women incarcerated with Miranda was awaiting trial on charges that she allegedly murdered her three children, while another inmate, a 28-year-old woman, had allegedly committed suicide in her cell the day after her first court appearance. The administrator repeatedly made it known to Krystal and Helen that he was new there and had limited knowledge about Miranda's incarceration.

37. Krystal's experience of seeing Miranda for the first time since March was the same as Helen's. She was horrified by her sister's appearance and the substantial weight loss. Once again, they couldn't speak to Miranda because the phones didn't work, and again Miranda pleaded with her mother and sister for food. Krystal and Helen did not see any of the other inmates but at times heard other inmates screaming that they were hungry and needed food. Whenever the screams could be heard, one of the corrections officers would try to drown out the sound by needlessly opening and closing large metal doors. Krystal and Helen learned that Miranda's cell was filled with urine, feces, and blood. During their visit, an employee at the jail whispered quietly to Krystal that there are employees at the jail who "talk about your sister a lot" and watch her when she's undressed. Defendants' failure to ensure that Miranda and other detainees were fed, received medical care, were provided safe conditions of confinement, were not sexually assaulted and/or otherwise sexually violated and/or harassed, and were protected from harm violated the Eighth and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda was fed, received medical care, was provided safe conditions of confinement, was not sexually assaulted and/or otherwise sexually violated and/or harassed, and was protected from harm and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

38. After her visit, Krystal emailed the District Attorney's Office and reported what she observed at Sandy Mush, what she was told about the inmates being transferred to another facility except for those who the jail considered to have "mental disorders," and reported that she heard inmates at Sandy Mush screaming that they were hungry and needed food. Krystal did not receive a response from the District Attorney.

39. Krystal and Helen went to the next hearing in Miranda's case, on November 30, 2023, and Krystal told Andrade that if he didn't tell the judge what she saw at Sandy Mush, she would find a way to tell the judge herself. At the time, either Andrade had personal knowledge that Miranda had lost at least 40 pounds since her incarceration but took no action, or Andrade was unaware of Miranda's weight loss because he hadn't seen Miranda over the past nine months, had not inquired into her physical wellbeing, and did not communicate with Miranda or make it possible for Miranda to communicate with Andrade or any attorney or come to court. Miranda was not brought to court on November 30, 2023, and the judge was told that Miranda refused to appear in court. Deputy County Counsel advised the court that Miranda had recently been placed under a temporary conservatorship. Andrade requested that the court issue an order that would allow Miranda to be transferred from Sandy Mush to a mental health care facility, and the court granted the request. On December 2, 2023, Miranda

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

was transported from Sandy Mush to Marie Green Psychiatric Center ("Marie Green"), a County-run facility in Merced.

**B. December 2, 2023 to March 5, 2024: Miranda's Imprisonment at Marie Green**

40. Marie Green's "MD Intake Assessment," conducted by a psychiatrist, states: "Client has received treatment at the jail but there is no information or records available from the jail." According to Marie Green's records, Sandy Mush did not provide Marie Green with any information at any time about Miranda's nine-month incarceration at Sandy Mush, and the only information Marie Green allegedly had about Miranda was taken from a "report" that contained a single paragraph provided by Miranda's alleged Deputy Public Conservator, who was appointed two weeks earlier and two sentences from an electronic health record ("EHR").

41. As far as the information Marie Green obtained from the "report," the intake assessment states: "The client has refused medication. Per client's conservator, 'client was placed on T-Con effective 11/17/23 and is was [sic] incarcerated at Sandy Mush. After yesterday's court proceedings.[sic] It was recognized that client is badly in need of psychiatric stabilization as she has been decompensated due to treatment non-compliance. In addition, the client also refuses to eat, which has resulted in 40 pound weight loss since her incarceration as she believed she is being poisoned. The jail remains adamant that PG/PC [Public Guardian/Public Conservator] secure placement for the client, however, fail to understand that in her current condition, placement is near impossible.'"

42. As far as the information obtained from the EHR, the Marie Green intake assessment contains the following statement: "Per EHR, this morning Dylan, Psychiatric Nurse from Well Path attempted to engage in conversation with client. The client terminated the conversation and began to masturbate." At the time, there was a nurse at Sandy Mush named Dylan. Marie Green's records state that "there is no information or records available from the jail" and the only known record of any event from Miranda's nine-month imprisonment at Sandy Mush is a single statement from an EHR inserted into the Marie Green records regarding an alleged sexual encounter at Sandy Mush involving Miranda and Dylan on the morning that Miranda was transported to Marie Green's facility. Although the allegation

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

appears in the background information in the County's Marie Green records, according to the records, neither this alleged incident nor anything having to do with sexual behavior was ever raised by anyone at Marie Green during Miranda's imprisonment there.

43. The Marie Green intake assessment states that Miranda "presented very disorganized" and described Miranda as "not answering questions in a meaningful manner" and repeatedly saying things like, "I have Anthrax" or "I need a vaccine for my head" or "I want to freeze my heart and brain." Despite the conditions at Sandy Mush, Marie Green's records contain alleged statements that were fabricated to support a schizophrenia diagnosis. Marie Green's records contain statements attributed to Miranda that she either never said or were said innocently or in another context and were then seized upon as fodder for the records. The County's records also contain alleged statements by Miranda freely expressing her religious beliefs and viewpoints as a Christian that were then used as a basis to claim that Miranda was delusional. The County's records that exist were created and maintained in a manner and with systems that undermine their accuracy and reliability and allow for the fabrication, alteration, and/or destruction of the records. Defendants' failure to ensure as to Miranda and other detainees that there exist reliable, accurate, and complete medical and prison records, and that a medical diagnosis is valid and legitimate, and also does not abridge speech or the free exercise of religion, violated the First, Fourth, Sixth, Eighth and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda was validly diagnosed, that accurate medical and prison records existed and were maintained, and that a conservatorship was justified and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

delegees in connection with the constitutional violations.

44. According to the County's records, upon arriving at Marie Green, Miranda was immediately administered drugs to treat schizophrenia and was eventually placed on an intensive regimen of pills and injections without Miranda ever being validly diagnosed with schizophrenia. Defendants' failure to ensure that Miranda and other detainees were not forcibly medicated and treated without a proper diagnosis violated the Eighth and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda was not forcibly medicated and treated without a proper diagnosis and/or by failing to supervise, train, investigate, discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations.

45. While imprisoned at Marie Green, Miranda's family members were able to visit her. Miranda's father frequently brought her meals. Miranda had a voracious appetite and quickly began to put back on the weight she had lost at Sandy Mush. Miranda called her family members constantly. Her communications at the time were lucid and her family members and others saw no evidence of Miranda hallucinating or suffering from delusions, as Marie Green's records claim. Miranda just wanted to go home and she was perfectly behaved, while waiting for that to happen. From Miranda and her family's perspective, there was nothing that could be done other than to wait for Miranda to be released from the County's custody. The threat of being sent back to Sandy Mush ensured that Miranda complied and that her family also wouldn't do anything that would cause Miranda's release to be delayed.

46. On December 13, 2023, Andrade appeared at the next hearing in Miranda's case. Miranda was not brought to court. Andrade told the judge that Miranda was at Marie

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

Green after being taken there due to "her decompensated state." Deputy County Counsel told the judge that the Public Conservator had filed a petition for conservatorship that was set to be heard on December 29, 2023, in another department. Andrade informed the judge that it was his understanding that Miranda was opposed to the conservatorship petition, "though I can see how it would be in her interest to be conserved." Andrade said, "the plan would be to see if on" December 29, Miranda "has a different frame of mind regarding the petition" and if not, the next step would be to request a contested hearing where the evidence can be "presented regarding the need for a conservatorship and her grave disability."

47. On January 3, 2024, Andrade appeared in court at the next hearing in Miranda's case. Adrade informed the judge that Miranda was "not present but in a facility." Deputy County Counsel informed the judge that the conservatorship matter had been continued twice "at the request of the Public Defender" and that Miranda remained "at Marie Green after decompensating at the jail." The court continued the matter to January 18, 2024.

48. On January 18, 2024, Andrade appeared in court and the judge was informed by Deputy County Counsel that the conservatorship matter had been continued again at the request of the Public Defender's Office. Deputy County Counsel informed the judge that Miranda "is likely going to contest her conservatorship and odds are she will likely request a jury trial." Andrade asked Deputy County Counsel to confirm that Miranda is "still at Marie Green," which Deputy County Counsel confirmed. Andrade then stated, "And so she is in a therapeutic environment unlike what was happening before, so I appreciate that she's in a better place." The matter was continued to January 25, 2024.

49. On January 25, 2024, Andrade appeared in court. Deputy County Counsel advised the judge that Miranda's conservatorship matter was formally set for a contested hearing and advised that a trial readiness conference was set for March 8, 2024. Andrade informed the judge that he was now also representing Miranda in the conservatorship proceedings. Andrade then also stated, "I'm thankful Mr. Gonzales is at Marie Green. She was considerably debilitated at the jail, but I understand that she has a right to her hearing and we will represent her at that hearing. But I understand the benefit of the conservatorship."

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

The matter was continued to March 11, 2024.

50. The County imprisoned Miranda at Marie Green from December 2, 2023 to March 5, 2024. The County's own records from Marie Green contain one document for the entire 37-day period, from December 3, 2023 through January 7, 2024, and the file expressly states that it does not have any documents between January 17, 2024 and February 20, 2024 (33 days) or between February 27, 2024 and March 5, 2024 (6 days). Out of the 93 days that Miranda was imprisoned at Marie Green, the County claims to only have records for 20 days.

51. For December 2, 2023, the County's Marie Green file has one report from one County employee. From December 3, 2023, through January 7, 2024, the only document in the Marie Green file is an EKG test of Miranda from December 5, 2023. For January 8, 2024, the County's Marie Green file has four reports from four different employees. For January 9, 2024, the file has eight reports from five different employees. For January 10, 2024, the file has five reports from five different employees. For January 11, 2024, the file has three reports from three different employees. For January 12, 2024, the file has four reports from four different employees. For January 13, 2024, the file has four reports from four different employees. For January 14, 2024, the file has three reports from three different employees. For January 15, 2024, the file has four reports from four different employees. For January 16, 2024, the file has six reports from five different employees. For January 17, 2024, the file has one report from one employee. The County inserted a page in the file that states: "No Merced County documents between 1/17/24 and 2/20/24." For February 20, 2024, the file has four reports from three different employees. For February 21, 2024, the file has seven reports from six different employees. For February 22, 2024, the file has two reports from two employees. For February 23, 2024, the file has four reports from four employees. For February 24, 2024, the file has two reports from two employees. For February 25, 2024, the file has two reports from two employees. For February 26, 2024, the file has one report from one employee. From February 27, 2024, the file has six reports from five employees. The County inserted a page in the file that states: "No Merced County documents between 2/27/24 and 3/5/24." For March 5, 2024, the file has one report from one employee. The 71 total reports in the file,

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

which cover 20 days out of 93 (excluding the EKG), were purportedly created by 24 different County employees.

52. On March 5, 2024, three days before the date set for the trial readiness conference in Miranda's conservatorship proceedings, Miranda was transported from Marie Green to Crestwood Behavioral Health Center in Bakersfield ("Crestwood"), a facility under contract with Merced County. Miranda was driven there by a Marie Green employee, unshackled, and they stopped along the way to eat at a taco truck. It was the first meal in a year that Miranda had outside the walls of a locked facility.

**C. March 5, 2024 to April 6, 2024: Miranda's Imprisonment at Crestwood**

53. According to Crestwood's admission records, Miranda was admitted to Crestwood to continue her treatment for schizophrenia, which was still based on her alleged refusal of medication and food at Sandy Mush and her alleged hallucinations and delusions.

54. During the admission process, Miranda was advised to complete "sexual education classes" at Crestwood "if you wish to pursue a sexual relationship." A Crestwood nurse confirmed on a form that Miranda had no "Risk Factors" that prevented male patients from having sex with Miranda during her imprisonment at Crestwood and stated that the "Treatment team feels that client is not at risk." Miranda was presented with a "Safe Sex Agreement" to sign that "recommended," but did not mandate, that male patients having sex with female patients "agree to stop at any point if asked" but noted that "sexual relations are more fulfilling in the context of a meaningful relationship and requires consent from both members." The "Safe Sex Agreement" was not signed by Miranda or Miranda's alleged court-appointed temporary conservator or her attorney in Merced. Crestwood's custom, practice or policy of requiring sex between patients to be supervised and monitored by staff confirms that Crestwood knew patients detained at Crestwood could not legally consent to sex.

55. Crestwood's records contain a document prepared by a male "Service Coordinator" entitled "Special Instructions." The document states: "Recovery Service Plan 02: To Decrease inappropriate sexual behaviors towards others. … As evidenced by: Client has a recent incident where she masturbated in front of a staff member at last placement per

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

admission packet." The document states: "Client Goal: 'To get better so I can go back home'" and then states, "Measurable Objectives: Miranda will learn to identify x1-2 coping skills that will help her refrain from displaying inappropriate sexual activities in the front of others." [sic]. The document then states: "Intervention: Service Coordinator will meet with Miranda weekly to discuss coping skills that will help her to be able to refrain from displaying inappropriate sexual behaviors in the front of others." "Date Initiated: 03/08/2024" "Created by: [Name of Employee] (Service Coordinator)."

56. The Crestwood Service Coordinator, who is not a medical professional, initiated this "Recovery Service Plan" on his own. The Service Coordinator was the only person affiliated with Marie Green or Crestwood who deemed it necessary to specifically address the allegations regarding the Sandy Mush nurse named Dylan, which allegedly appeared in an electronic health record. The Service Coordinator's reference to it in March 2024 was the first time the alleged December 2, 2023 incident was substantively addressed by anyone, which, contrary to the Service Coordinator's statement, did not allegedly occur at Miranda's "last placement," which was Marie Green, but occurred where she was detained before that, at Sandy Mush jail, where Nurse Dylan worked.

57. Crestwood's records contain four reports prepared by the Service Coordinator entitled "Program Progress Note—Weekly." The first report, dated March 12, 2024, states under the heading "Description of Service Need," "To Decrease inappropriate sexual behaviors towards others." The Service Coordinator then stated: "This past week Miranda has been very appropriate on the unit with her peers and staff." In the second report, dated March 20, 2024, the Service Coordinator stated, "This past week Miranda continue to do very well in this objective and has not displayed any type of inappropriate sexual activity to be noted and reported." In the third report, dated March 27, 2024, the Service Coordinator stated, "This past week Miranda continue to do very well in this objective and not displayed any inappropriate sexual behaviors." In the fourth report, dated April 3, 2024, the Service Coordinator stated, "This past week Miranda continue to do well and has not engaged in any inappropriate sexual behavior to be noted and reported."

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

58. Once Miranda was at Crestwood, her family was unable to visit her due to the distance. Miranda frequently communicated with them and expressed that she was looking forward to coming home soon.

59. Miranda was allegedly found by Crestwood employees on the morning of April 6, 2024, at about 6 AM, on the floor of her bathroom "in a seated position with the fitted bedsheet that was twisted and tied around her neck, with her head tilted to the left side and the bedsheet on the right side of her neck in an upward direction that was tied to the doorknob." An officer reported that the officer "interviewed the decedent's roommate … who informed her the decedent asked [roommate] to kill her. [Licensed Vocational Nurse] advised it was documented on March 13, 2024 by a Registered Nurse [that Nurse] was informed the decedent asked other patients to strangle her." Miranda's death "was determined to be a suicide."

60. Miranda was not suicidal, and her death was a homicide, not a suicide. To the extent the County claims it was a suicide, that would result in a host of separate constitutional harms arising from the County's acts and omissions that either failed to prevent the claimed suicide, or made it possible for a homicide to erroneously be determined to be a suicide and for a false determination to be made in this case. Defendants' failure to ensure that Miranda and other detainees at Crestwood were provided safe conditions of confinement, were not sexually assaulted or otherwise sexually violated and/or harassed, and were protected from harm violated the Eighth and Fourteenth Amendments. The constitutional violations occurred pursuant to a rule or regulation adopted by the County and/or the County Board of Supervisor's subordinates to whom final policymaking authority had been delegated, resulting from a deliberate choice to follow a course of action made from among various alternatives by the County officials, subordinates, or delegees responsible for establishing final policy as to this subject matter, and/or pursuant to a widespread, longstanding, or well-settled custom or practice that constitutes a standard operating procedure of the County. Andrade personally participated in the constitutional violations by failing to ensure that Miranda was provided safe conditions of confinement, was not sexually assaulted or otherwise sexually violated and/or harassed, and was protected from harm and/or by failing to supervise, train, investigate,

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

discipline, reprimand, and/or punish subordinates or delegees in connection with the constitutional violations. Additionally, the County failed to adequately monitor Crestwood in a manner that ensured Crestwood's compliance with the terms of its contract with the County and to ensure that Crestwood was not performing under the contract in a manner that violated Miranda's and other detainees' constitutional rights.

61. After Miranda's body was returned to her family, a viewing was held on April 17, 2024, and, to her family's surprise, Miranda's alleged conservator, the Deputy Public Conservator who they had never met, attended the viewing. It was the first time that anyone from the County who was appointed to represent Miranda was in a room with Miranda since her purported March 23, 2023 court appearance, ten days after her March 13, 2023 arrest.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### (DELIBERATE INDIFFERENCE TO VIOLATIONS OF CONSTITUTIONAL RIGHTS AS TO ALL DEFENDANTS)

62. Plaintiff repeats and realleges each and every allegation above as though fully set forth herein.

63. Defendants, and each of them, acted under color of state law.

64. Each defendant's acts, omissions, failures to act, customs, practices, policies, procedures, ratifications, failures to supervise and/or failures to train, violated Miranda's rights under the United States Constitution and failed to ensure that Miranda's constitutional rights were protected and not violated.

65. As a direct result of the deliberate indifference of each defendant, Miranda was damaged, injured, and irreparably harmed.

### SECOND CLAIM FOR RELIEF

### (MUNICIPAL LIABILITY FOR VIOLATIONS OF CONSTITUTIONAL RIGHTS AS TO DEFENDANTS COUNTY OF MERCED AND COUNTY OF MERCED BOARD OF SUPERVISORS)

66. Plaintiff repeats and realleges each and every allegation above as though fully

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

set forth herein.

67. Defendants, and each of them, acted under color of state law.

68. Each defendant's acts, omissions, failures to act, customs, practices, policies, procedures, ratifications, failures to supervise and/or failures to train, violated Miranda's rights under the United States Constitution and failed to ensure that Miranda's constitutional rights were protected and not violated.

69. The constitutional deprivations were the direct and predictable result of the deliberate choices of defendants, who were charged with the funding, contracting, monitoring, managing, supervising, and administering of its departments and services. The funding, contracting, monitoring, managing, supervising, and administering decisions made by defendants' policymaking authorities and/or their delegees ensured that any defects would go undetected and/or would be ignored.

70. As a direct result of defendants and/or their delegees' conduct, Miranda was damaged, injured, and irreparably harmed.

## VI. PRAYER FOR RELIEF

Wherefore, plaintiff Ares Avila, as successor in interest to her mother, Miranda, demands the following relief against all defendants, and each of them, with respect to each of the claims for relief above:

1. Compensatory, general, and special damages in an amount in accordance with proof;

2. Punitive and exemplary damages as to the individual defendants only and as to any defendants against whom punitive and exemplary damages are recoverable as a matter of law, but not as to any defendant against whom punitive and exemplary damages are not recoverable as a matter of law, including, without limitation, the County;

3. Reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. §1988;

4. Costs of suit necessarily incurred herein; and,

5. Such other and further relief as the Court deems just or proper.

//

Landes Law Corporation
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
Telephone 310-926-2862; www.landeslawcorp.com

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

Dated: July 27, 2026 LANDES LAW CORPORATION

By: /S/ Ezra D. Landes
Ezra D. Landes
Attorney for Plaintiff Ares Avila